Affirmed and Memorandum Opinion filed March 10, 2009








Affirmed
and Memorandum Opinion filed March 10, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00913-CR

____________

 

JADE SHEREE NEAL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1126385

 



 

M E M O R A N D U M  O P I N I O N

Appellant, Jade Sheree Neal, appeals from her conviction
for murder.  Tex. Penal Code Ann. ' 19.02(b)(1)-(2)
(Vernon 2003).  The jury found appellant guilty and assessed punishment at
thirty-four years= confinement in the Texas Department of
Criminal Justice, Institutional Division.  In eight issues, appellant contends
that (1) the trial court erred when it did not permit appellant to offer
evidence of the complainant=s past and when it allowed a police
officer to testify that witnesses= statements were
consistent, (2) statements made by the prosecutor during closing argument were
improper, and (3) the evidence is legally and factually insufficient.  We
affirm.  








I.  Background

On November 4, 2006, appellant, the complainant Joseph
Durousseau, and several family members set out in appellant=s father=s car for
birthday-party supplies.  At one point during the trip, an argument started
between the complainant and one or more occupants of the car.  The complainant
told the driver, his girlfriend Tomika Hall, to stop the car.  Hall, who
identified appellant as her step-sister,[1]
testified that when she told the complainant that a parking lot was nearby, he Asnatched@ the keys out of
the ignition.  At that point, the complainant exited the car, followed by
appellant, her father Efrem Neal, her uncle Edward Neal, and Hall.[2]  


The testimony differs as to what happened next.  According
to Hall, appellant and the complainant continued to argue.  Hall testified that
when she attempted to intervene, appellant pushed her.  Hall went back to the
car and retrieved a screwdriver from the glove compartment to open the trunk
and remove her groceries.  As she was doing so, Hall looked around the trunk
and saw the complainant on the ground and appellant and Edward Neal standing
over him.  Hall observed the complainant covered in blood.  She stated that the
complainant stumbled into the street and fell.  Maximillian Sanchez was
visiting his wife at work and witnessed the events happening on the street.  He
testified that the younger of the two men standing by the car punched the
complainant, and the complainant fell.  Sanchez stated that appellant was
making motions as if looking for a spot to stab the complainant. He then saw
three or four stabbing movements.  The complainant stood up, stumbled into the
street, and fell to the ground, at which point Sanchez called 911.  C.R., Hall=s eight-year-old
daughter, who was an occupant of the car, testified that the complainant was
stabbed with a knife by appellant and that appellant got the knife from Edward
Neal=s pocket.   








Edward and Efrem Neal testified that the complainant struck
appellant, and then the complainant and Edward Neal began to fist fight.  Both
testified that they did not see anyone stab the complainant.  Appellant
testified that the complainant slapped her twice.  After the second time,
appellant pulled out a knife and Aused it.@  She testified
that her intention was not to kill him but to Aget him off of me
so he could quit hitting me.@  According to appellant=s testimony, when
the complainant raised his hand to strike her again, appellant cut him again
with the knife.  She testified that Edward Neal and the complainant started to
fight.  Appellant stated that she and Hall tried to break up the fight, and
when they did, the complainant, Edward Neal, and Hall fell to the ground.  As
they were getting up, Hall noticed that the complainant was bleeding. 
According to the appellant=s testimony, the complainant got up and
swung again; Edward Neal hit him in the chest, and the complainant took two
steps before he collapsed.  Dr. Anna Lopez, a forensic pathologist with the
Harris County Medical Examiner=s Office, testified that the complainant
had major stab wounds to the chest and back.  The stab wound to the chest went
through the heart; the knife blade was still in the complainant=s back.    

After Sanchez called 911, he brought the two child
occupants of the car inside because they were crying.  He then went around the
corner to talk to his friend Jimmy Galaviz.  Galaviz testified that he observed
appellant walking up and down his street.  According to Galaviz, appellant
asked Galaviz=s neighbor for a telephone, but the neighbor declined
to let her use one.  Galaviz told Sanchez where he saw appellant walking, and
Sanchez found her.  Sanchez went back to the scene and told Officer Jim Adkins
of appellant=s whereabouts.  Officer Adkins and Sanchez drove in
Sanchez=s car to appellant=s location.  Based
on information from Sanchez, Officer Adkins arrested appellant.  Appellant was
charged with murder.  A jury found appellant guilty and sentenced her to
thirty-four years= confinement in the Texas Department of
Criminal Justice, Institutional Division.








II.  Analysis               

A.  Admissibility of Evidence

In her first three issues, appellant contends that the
trial court erred when it did not permit appellant to offer evidence of the
complainant=s past at the guilt/innocence and punishment phases of
trial.  Specifically, appellant argues the trial court erred in excluding this
evidence (1) to show that the complainant was the first aggressor, (2) to rebut
an alleged false impression left by Sergeant Guillermo Gonzalez, and (3) to
rebut an alleged false impression left by the complainant=s brother during
the punishment phase.   

We review a trial court=s decision to
admit or exclude evidence under an abuse of discretion standard.  Willover
v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  We reverse only when
the trial court=s decision was so clearly wrong as to fall
outside the zone of reasonable disagreement.  See Weatherred v. State,
15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  We uphold the trial court=s ruling if it is
reasonably supported by the record and correct under any theory of law
applicable to the case.  Willover, 70 S.W.3d at 845.

Generally, a defendant in a murder prosecution who raises
the issue of self-defense may introduce evidence of the victim=s violent
character.  See Tex. R. Evid. 404(a)(2);
Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  The defendant
may offer opinion or reputation testimony to prove that the victim acted in
conformity with his violent nature.  See
Tex. R. Evid. 404(a)(2),
405(a); Torres, 71 S.W.3d at 760.  Specific, violent acts of misconduct
may be admitted to show the reasonableness of the defendant=s fear of danger,
or to show that the victim was the first aggressor.  Torres, 71 S.W.3d
at 760.  Evidence of specific bad acts is admissible only to the extent that it
is relevant for a purpose other than to show character conformity.  Tex. R. Evid. 404(b); Torres,
71 S.W.3d at 760.  

1.  First Aggressor








First, appellant complains that the trial court erred in
refusing to allow her to question Hall regarding the complainant=s propensity for
violent behavior.  Appellant argues the evidence of the complainant=s violent past was
admissible to show that the complainant was the first aggressor.  The Court of
Criminal Appeals has held that specific, violent acts may be relevant to show
the victim=s intent, motive, or state of mind when proving that a
victim was the first aggressor.  Torres, 71 S.W.3d at 760.  However, in
this case, appellant did not argue to the trial court that the evidence should
be admitted because the victim was the first aggressor.  Rather, during a
discussion at the bench, appellant=s counsel argued
in favor of admissibility of the complainant=s past acts
because the acts showed appellant=s state of mind as
to why she was afraid of him.  We may not overturn a trial court=s decision on a
legal theory not presented to the trial court.  Vasquez v. State, 225
S.W.3d 541, 543 (Tex. Crim. App. 2007); London v. State, B S.W.3d B, No.
05-07-00983-CR, 2008 WL 5102975, at *5 (Tex. App.BDallas Dec. 5,
2008, pet. filed) (holding appellant failed to preserve error when he did not
present his Afirst aggressor@ argument in trial
court).  Because appellant did not present the argument that the complainant
was the first aggressor to the trial court when seeking to admit the evidence,
she has failed to preserve error for review.  

Moreover, during cross-examination outside the presence of
the jury, Hall testified that the complainant never hit her.  Hall also stated
that she was not aware that the complainant had been convicted of assault and
terroristic threat, and she was not aware of any type of assaultive behavior
from complainant.  While the appellant need not have knowledge of the victim=s violent acts to
show that the victim was the first aggressor, the witness must have knowledge
of such acts; according to the offer of proof, Hall did not.  See Torres,
71 S.W.3d at 761.  Accordingly, we overrule appellant=s first issue.    


2.  Alleged False Impression Left by Sergeant Gonzalez

In her second issue, appellant contends that the trial
court erred when it refused to allow appellant to cross-examine Sergeant
Guillermo Gonzalez about the complainant=s past criminal
history.  Specifically, appellant claims that Sergeant Gonzalez left a false
impression when he stated that he did not have any reason to believe throughout
the course of his investigation that the complainant was killed in
self-defense.








To preserve error in a trial court=s exclusion of
evidence, the substance of the excluded evidence must be shown by an offer of
proof unless it is apparent from the context of the questions asked.  Tex. R. Evid. 103(a)(2).  Otherwise,
there is nothing before the appellate court to show reversible error in the
trial court=s ruling.  Guidry v. State, 9 S.W.3d 133, 153
(Tex. Crim. App. 1999); Stewart v. State, 686 S.W.2d 118, 122 (Tex. Crim.
App. 1984).  Error may be preserved by an offer of proof in question and answer
form or in the form of a concise statement by counsel.  Tex. R. Evid. 103(b); Love v. State, 861 S.W.2d 899,
901 (Tex. Crim. App. 1993).  Counsel=s concise
statement must include a summary of the proposed testimony.  Love, 861
S.W.2d at 901.  Error is not preserved if the offer of proof is inadequate.  Warner
v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998).     

Here, appellant=s trial counsel
told the trial court that he intended to ask Sergeant Gonzalez whether he
performed a criminal background check on the complainant to show that the
complainant had a history of violence.  The trial court responded: AIt may be that you
can call him back after she puts it in perspective.  But there=s nothing to
indicate that he knew anything about anything.@  Later in the
trial, there was another discussion on this issue.  In that discussion,
appellant=s trial counsel stated that he wished to introduce
evidence of the complainant=s criminal history through Sergeant
Gonzalez.  The trial court stated the evidence was not relevant because
appellant was not aware of the complainant=s criminal
history.  The trial court then told counsel that he could put on the record
what he would have asked Sergeant Gonzalez once the jury Agoes out.@  Just prior to
the defense=s resting its case, appellant=s trial counsel
asked about the offer of proof.  The following exchange took place:

Appellant=s Trial Counsel:
You said you were going to let me make my proffer with Officer Gonzalez.  If I
rest and close, then I don=t see how the Court B

The Court: But for your proffer.

Appellant=s Trial Counsel:
Okay.








The Court: I=ll reserve
specifically your right to put on the record so that I don=t have to send the
jury out after they retire.

The
offer of proof is not in the record.  Texas Rule of Evidence 103(b) clearly
states that the offering party must make its offer of proof Abefore the court=s charge is read
to the jury.@  Tex. R. Evid.
103(b).  This is not a case in which the trial court made an absolute
refusal to allow appellant to make an offer of proof.  See Spence v. State,
758 S.W.2d 597, 599 (Tex. Crim. App. 1988).  Rather, the trial court indicated
that trial counsel could make the offer of proof after the jury was
deliberating.  The burden to preserve error rests on appellant.  See Tex. R. App. P. 33.1(a).  It was
defense counsel=s responsibility to insist on his right to
make the offer of proof before the charge was read.    

Because nothing in the record indicates what knowledge
Sergeant Gonzalez had about the complainant=s convictions, the
substance of the excluded testimony cannot be determined.  Bundy v. State,
B S.W.3d B, No. 2-07-189-CR,
2009 WL 112766, at *2 (Tex. App.BFort Worth, Jan.
15, 2009, no pet. h.); Garza v. State, 846 S.W.2d 936, 939 (Tex. App.CHouston [1st
Dist.] 1993, pet. ref=d).  Therefore, appellant failed to
preserve error and we overrule her second issue.

3.  Alleged False Impression Left by the Complainant=s Brother

In her third issue, appellant contends that the trial court
erred when it did not allow her to cross-examine the complainant=s brother about
the complainant=s criminal record during the punishment
phase of trial.  Specifically, appellant argues that Charles Washington, the
complainant=s brother, created a false impression Aabout who the
complainant was@ when he described the complainant as a
good brother and a church-goer. 








Victim-impact evidence may be admissible at the punishment
phase of trial when it Ahas some bearing on the defendant=s personal
responsibility and moral culpability.@  Salazar v.
State, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002).  The Court of Criminal
Appeals has criticized the use of negative victim-impact evidence to show that
a decedent was not a valuable member of the community.  See Goff v. State,
931 S.W.2d 537, 554-56 (Tex. Crim. App. 1996) (holding that evidence of victim=s homosexuality,
offered with the assumption that jury would consider a homosexual a less
valuable member of society, was inadmissible in capital-murder case); Clark
v. State, 881 S.W.2d 682, 698-99 (Tex. Crim. App. 1994) (in dicta,
disagreeing with defendant=s logic Ain suggesting that
the decedent=s behavior indicated that she was not a particularly
valuable member of the community and that her life might have had more value
had she been of a different character@).  

Here, appellant claims Washington Aopened the door@ to the
complainant=s criminal history when he testified on direct
examination that he and the complainant had a good relationship, that the
complainant was protective of his brothers and sisters, and that the
complainant taught him how to play basketball and cut hair.  Later, in response
to a question about whether he had ever met appellant, Washington stated:

A:  She B it was a night
that Joe and Tomika had come from church.  And I guess she was their ride to
church.  And he stopped by the house to ask me if he could get gas money to
give to her for taking them home. 

These
comments do not create a false impression that the complainant was without
faults.  The evidence of the complainant=s criminal record
would not have rebutted Washington=s testimony that
he had a good relationship with the complainant, that the complainant was
protective of his brothers and sisters, or that the complainant taught him how
to play basketball and cut hair.  The testimony about the complainant=s going to church
was merely to place in context how Washington knew appellant.  Evidence of the
complainant=s criminal record is essentially negative
victim-impact evidence, and the trial court did not abuse its discretion in
excluding it.  See Richards v. State, 932 S.W.2d 213, 215-16 (Tex. App.BEl Paso 1996, pet.
ref=d) (holding that
evidence that victim was not a Amodel citizen@ was irrelevant to
issue of appellant=s personal responsibility and moral
guilt).  We overrule appellant=s third issue.  








B.  Alleged Improper Jury Argument

In her fourth and fifth issues, appellant contends the
prosecutor made improper statements during jury argument that warrant reversal
of her conviction.  

Appellant first contends the following comment by the
prosecutor during closing argument was improper:

I promise you what happened out
there is that her uncle was holding him down and she stabbed him to death and
he couldn=t even defend himself.  That=s why he has no
marks on his hand, knife marks on his hand because they were behind his back
while she stabbed him.  He couldn=t defend himself.

Appellant
admits that she did not object at trial to this argument.  However, appellant
argues that the above argument was so prejudicial that no objection at trial is
required, citing Romo v. State for this proposition.  In Cockrell v.
State, the Court of Criminal Appeals overruled Romo and any other
cases allowing an exception to normal error-preservation rules for improper and
incurable jury argument.  See Cockrell v. State, 933 S.W.2d 73, 89 (Tex.
Crim. App. 1996) (overruling Montoya v. State, 744 S.W. 2d 15 (Tex.
Crim. App. 1987) and Romo v. State, 631 S.W.2d 504 (Tex. Crim. App.
1982)).  For appellant to complain on appeal about erroneous jury argument,
appellant must show that she objected at trial and that she pursued her
objection to an adverse ruling.  See Mathis v. State, 67 S.W.3d 918,
926-27 (Tex. Crim. App. 2002) (reaffirming the holding in Cockrell that
appellant must pursue to adverse ruling his objections to jury argument); Moreno
v. State, 195 S.W.3d 321, 328-29 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d) (citing Cockrell for this
proposition).  Because appellant did not object to the argument she challenges
in her fourth issue, appellant has not preserved the issue for appellate
review.  Accordingly, we overrule appellant=s fourth issue.

In her fifth issue, appellant argues the trial court erred
in overruling her objection to the following jury argument:








Maximillian Sanchez told you what
he saw.  And he helped the police get a killer off the street on that day.  And
we have to thank him for what he did.  He has been so inconvenienced by this
case and by her killing Joseph Durousseau.  He has been so inconvenienced by
this woman, he=s not going to get up there and tell you anything
unless it=s the truth.  He doesn=t even like me. 
He=s not here to help
anybody.            

Appellant
contends the prosecutor bolstered the credibility of an eyewitness by giving
the jury her opinion about the truthfulness of the witness=s testimony. 

Jury argument must fall within one of four areas: (1)
summation of the evidence; (2) reasonable deduction drawn from the evidence;
(3) answer to opposing counsel=s argument; or (4) plea for law
enforcement.  Bigby v. State, 892 S.W.2d 864, 889 (Tex. Crim. App.
1994).  Wide latitude is permitted in drawing inferences from the evidence, so
long as the inferences are reasonable, fair, legitimate, and offered in good
faith.  Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  To
constitute reversible error, jury argument must be extreme or manifestly
improper, or inject new and harmful facts into evidence.  Id.  

During his testimony, Sanchez stated that he did not want
to be in court to testify, he had lost his job because he had to come to court
several times, he was, and continued to be, mad at the prosecutor, and despite
asking the prosecutor for a sentence reduction in exchange for his testimony,
he never received it.  Appellant=s trial counsel
also questioned Sanchez about the lost job and sentence reduction.  








Appellant cites Menefee v. State, in which the Court
of Criminal Appeals held that improper jury argument warranted reversal because
the prosecutor expressed his personal opinion about the witness=s credibility. 
614 S.W.2d 167, 168 (Tex. Crim. App. 1981).  The statement in Menefee
was: AAnd Virse, I don=t believe I have
ever seen anybody that I thought was any more honest than she is.@  Id. 
Virse Hayes was the only witness who could identify appellant as the person who
committed the offense.  Id.  This case is distinguishable in that the
prosecutor=s basis for the statement in Menefee was the
prosecutor=s personal opinion of the honesty of the witness,
whereas, in this case, the prosecutor=s basis was a
summation of Sanchez=s testimony that he had been
inconvenienced, was mad at the prosecutor, and did not receive a sentence
reduction despite repeated inquiries.  Her statement that Sanchez did not have
a motive to lie was a reasonable deduction based on his answers to questions
about any motive to testify.  Therefore, appellant=s fifth issue is
overruled.     

C.  Sufficiency of the Evidence

In her sixth and seventh issues, appellant argues the
evidence is legally and factually insufficient to uphold her conviction for
murder when the evidence failed to establish beyond a reasonable doubt that
appellant intentionally caused the death of the complainant.  Appellant also
challenges the jury=s implicit rejection of her self-defense
claim.       

In a legal-sufficiency review, we view all of the evidence in
the light most favorable to the verdict and determine whether a trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
Ed. 2d 560 (1979); Young v. State, 14 S.W.3d 748, 753 (Tex. Crim. App.
2000).  The jury is the exclusive judge of the credibility of witnesses and of
the weight to be given to their testimony; it is within the exclusive province
of the jury to reconcile conflicts in the evidence.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  Thus, when performing a
legal-sufficiency review, we may not reevaluate the weight and credibility of
the evidence and substitute our judgment for that of the fact-finder.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  We must resolve any
inconsistencies in the testimony in favor of the verdict.  Curry v. State,
30 S.W.3d 394, 406 (Tex. Crim. App. 2000).            








In a factual-sufficiency review, we consider all of the
evidence in a neutral light.  Watson v. State, 204 S.W.3d 404, 414-15
(Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005).  We then ask whether (1) the evidence supporting the
conviction, although legally sufficient, is nevertheless so weak that the jury=s verdict seems
clearly wrong and manifestly unjust, or (2) considering conflicting evidence,
the jury=s verdict is
against the great weight and preponderance of the evidence.  Watson, 204
S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  Additionally, we must give due deference to the jury=s determinations,
particularly those concerning the weight of the evidence and the credibility of
witness testimony.  See Johnson, 23 S.W.3d at 8-9.

We measure the legal sufficiency of the evidence by the
elements of the offense as defined by the hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  We also measure the
factual sufficiency of the evidence by using a hypothetically correct jury
charge.  Wooley v. State, 273 S.W.3d 260, 266-67 (Tex. Crim. App.
2008).  ASuch a charge
would be one that accurately sets out the law, is authorized by the indictment,
does not unnecessarily increase the State=s burden of proof
or unnecessarily restrict the State=s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.@  Malik, 953 S.W.2d at 240. 
Appellant was indicted under two theories of murder, and the jury was charged
that it could convict appellant under either theory.  In pertinent part, the
statute states that a person commits murder if he intentionally or knowingly
causes the death of an individual or intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of an
individual.  Tex. Penal Code Ann. ' 19.02(b)(1)-(2)
(Vernon 2003).  A person is generally justified in using deadly force against
another if he reasonably believes that deadly force was necessary to protect
himself against the other=s use or attempted use of unlawful deadly
force, and a reasonable person in the actor=s situation would
not have retreated.  Tex. Penal Code
Ann. '' 9.31(a), 9.32(a) (Vernon 1994).[3] 









A defendant has the burden of producing some evidence to
support a claim of self-defense.  Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003).  Once the defendant produces some evidence, the State
then bears the burden of persuasion to disprove the raised defense.  Id. 
The burden of persuasion does not require the State to produce evidence; it
requires only that the State prove its case beyond a reasonable doubt.  Id. 
Thus, a determination of guilt by the fact-finder implies a finding against the
defensive theory.  Id.  Self-defense is a fact issue to be determined by
the jury, which is free to accept or reject the defensive evidence.  Saxton
v. State, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).

We begin by discussing the evidence that appellant contends
supports her claim of self-defense and undermines the jury=s verdict. 
Appellant cites the testimony of Tomika Hall and Edward Neal that the
complainant Asnatched@ the car keys from
the ignition and had a confrontation outside the car with appellant to show his
alleged aggressive actions.  She points to the testimony of Edward and Efrem
Neal, who stated that the complainant struck appellant first.  Appellant
herself testified that the complainant slapped her twice before she pulled out
a knife and Aused it.@  At trial,
appellant stated that she did not intend to kill the complainant, rather her
intention was to Aget him off of me so he could quit hitting
me.@  No witness
testified to the use or attempted use of unlawful deadly force by the
complainant.  Even appellant testified only to the complainant=s slapping her
before she used her knife.  Ogas v. State, 655 S.W.2d 322, 324 (Tex.
App.CAmarillo 1983, no
pet.) (holding that a slap to the face did not constitute use or attempted use
of deadly force).








The State produced two eyewitnesses.  Maximillian Sanchez
testified that he heard appellant screaming and yelling at the complainant
about a set of keys, while two men were arguing and wrestling with the
complainant.  He witnessed the fight escalate to a physical level when one of
the men punched the complainant.  He did not see the complainant hit back.  He
testified that appellant was then making motions, looking for a spot to stab
the complainant and eventually made three or four stabbing movements.  He did
not see the victim use any force or slap appellant.  C.R., Tomika Hall=s eight-year-old
daughter, testified that the complainant was stabbed with a knife by
appellant.  She stated that she did not hear any yelling or see the complainant
slap appellant, although she later testified that she did hear fighting but did
not know what the fighting was about.  Hall testified that appellant did not
appear fearful for her life and that she could have left the scene safely
before she stabbed the complainant.  Sergeant Guillermo Gonzalez, the lead
detective, testified that appellant did not look like she was in any pain and
did not appear injured or in need medical attention when he interviewed her. 
Dr. Lopez testified that the complainant had two main stab wounds to the chest
and back as well as several abrasions and other injuries.    

Appellant contends that Sanchez and C.R. are not credible
witnesses because (1) Sanchez claimed that he observed appellant with a
screwdriver making stabbing motions at the complainant, whereas, according to
Dr. Lopez=s testimony, the murder weapon was a knife; (2) although
C.R. claimed to have seen appellant stab the complainant, she could not recall
any details about the incident; and (3) C.R.=s testimony that
she did not see her grandfather and his brother fighting with the complainant
contradicts Sanchez=s testimony that two men were assaulting
the complainant.     

Viewing the evidence in the light most favorable to the
verdict, we hold that the jury could have concluded beyond a reasonable doubt
that the complainant did not use unlawful deadly force against appellant and
that, therefore, appellant was not justified in using deadly force to protect
herself.  See Saxton, 804 S.W.2d at 914.    








The evidence is also legally sufficient for a rational
trier of fact to find that appellant intentionally or knowingly caused the
death of the complainant by stabbing him with a deadly weapon or intended to
cause serious bodily injury and committed an act clearly dangerous to human
life that caused the death of the complainant.  The specific intent to kill may
be inferred from the use of a deadly weapon.  Flanagan v. State, 675
S.W.2d 734, 744 (Tex. Crim. App. 1984).  A knife is not a deadly weapon per
se.  Tex. Penal Code Ann. ' 1.07(a)(17)(B)
(Vernon 2003).  Factors to consider in determining whether the knife qualified
as a deadly weapon include (1) the size, shape, and sharpness of the knife; (2)
the manner in which appellant used the weapon; (3) the nature of any inflicted
wounds; (4) testimony concerning the knife=s life-threatening
capabilities; and (5) the words appellant spoke.  Banargent v. State,
228 S.W.3d 393, 398 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d).  Both expert
testimony and lay testimony may be independently sufficient to support a deadly
weapon finding.  Id.  

Here, two witnesses saw appellant stab the complainant, and
one of the witnesses, Sanchez, testified to her making motions as if looking
for a spot to stab him before doing so.  Dr. Lopez testified that the knife
found in the complainant=s back was 4 : inches in length;
the majority of it was inserted into the complainant=s skin with only 2 inch protruding
from the wound.  She testified that a large amount of force was used to
penetrate the knife into the bone.  The chest wound penetrated the chest wall
as well as the heart, the diaphragm, and the liver.  She stated that a large
amount of force was used to penetrate the chest wall.    In addition, appellant
does not appear to challenge the sufficiency of the evidence regarding whether
she intended to cause serious bodily injury and committed an act clearly
dangerous to human life that caused the death of the complainant.  The jury was
instructed that it could find appellant guilty of murder under either theory.  Huffman
v. State, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008) (stating that, with
respect to homicide offenses, the court has held different legal theories
involving the same victim are simply alternate methods of committing same
offense).








We further conclude that the evidence is factually
sufficient.  Appellant=s argument on appeal is that the
complainant was the first aggressor, that she feared him, and that appellant
stabbed him because the complainant was striking her.  Although Edward Neal,
Efrem Neal, and appellant testified that the complainant struck appellant
first, their testimony was contradicted by Sanchez, an eyewitness, who
testified that he did not see the complainant strike appellant, and C.R., who
testified that she did not remember seeing the complainant hit anyone. 
Although there was conflicting testimony as to who was the first aggressor,
Hall testified that appellant could have left the scene safely before she
stabbed the complainant.  Sergeant Gonzalez stated that Edward Neal was
reluctant to give him the whole story, and Efrem Neal was uncooperative. 
Officer Jim Adkins, who was at the scene, testified that appellant initially told
him that (1) Tomika Hall had killed the complainant, (2) appellant did not
indicate that she was afraid of the complainant, and (3) she did not state the
complainant tried to hit or slap her.  Finally, Dr. Lopez testified that the
complainant was stabbed in the chest piercing the heart, liver, and diaphragm
as well as in the back, where Dr. Lopez recovered the knife. 

The jury is the
sole judge of the credibility of the witnesses and the weight to be given the
evidence.  Jones v. State, 944 S.W.2d 642, 647-48 (Tex. Crim. App.
1996).  The jury was free to reject appellant=s evidence that
she was acting in self-defense and to accept the evidence to the contrary.  See
Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).  Viewing the
evidence in a neutral light, the evidence of guilt is not so weak that the jury=s verdict seems
clearly wrong and manifestly unjust nor is the contrary evidence so strong that
the jury=s verdict is
against the great weight and preponderance of the evidence.  See Watson v.
State, 204 S.W.3d 404, 416-17 (Tex. Crim. App. 2006).  Therefore, we hold
that the evidence is factually sufficient to support the jury=s finding of
guilt.

Accordingly, we
overrule appellant=s sixth and seventh issues.      

D.  Admission of
Allegedly Bolstering Testimony

In her eighth
issue, appellant contends that the trial court erred in allowing Sergeant
Gonzalez to bolster the statements of C.R. and Sanchez.  She specifically
criticizes his testimony that he found the statements of C.R. and Sanchez to be
consistent.  She also contends that this testimony invaded the province of the
jury. 

Following is the
testimony in question:

Q: And when you
interviewed her, did you find her story to be consistent with Mr. Sanchez=s statement?

Appellant=s Counsel: I
object to that, Your Honor, to the relevance of that.








The
Court: Anything else?

Appellant=s Counsel: Well,
it=s also hearsay,
Your Honor.

The
Court: Sustained as to hearsay.

Q: Now, I don=t want you to tell
me what the statement was, but did you find her story to be consistent?

Appellant=s Counsel: Your
Honor, that=s for the jury.  That invades the province of the
jury, and it=s not relevant as to what this witness thought about
the witness= story.      

The
Court: Overruled.

Q: You can answer
the question.

A: Yes.

Q: You found her
story to be consistent?

A.  Yes.

Q: And was Tomika
Hall helping her answer any questions at all?

A: No.

Q: And did you
find her to be credible when you interviewed her?

Appellant=s Counsel:
Objection, Your Honor.

The
Court: That=s sustained.

The overruled
objections lodged by appellant at trial were relevance and invading the province
of the jury.  Appellant is arguing on appeal that the testimony constituted
bolstering and invaded the province of the jury.  With regard to bolstering,
because appellant did not object on this ground at trial, she has not preserved
error for review.  See Tex. R.
App. P. 33.1; Stone v. State, 583 S.W.2d 410, 414 (Tex. Crim.
App. 1979) (appellant waived bolstering issue when he objected on ground of
invading the province of the jury and bolstering, but bolstering objection not
made until after answer given).  








With regard to
appellant=s contention that Sergeant Gonzalez=s testimony
invaded the province of the jury and allowed the officer to give his opinion
that the witness was telling the truth, Sergeant Gonzalez did not offer an
opinion regarding the veracity of the witnesses or infer that the information
they gave was correct; he merely stated that C.R.=s story was
consistent with Sanchez=s account.  In doing so, Gonzalez was
stating a fact objectively derived from the witnesses= statements.  See
Skruck v. State, 740 S.W.2d 819, 821 (Tex. App.CHouston [1st
Dist.] 1989, pet. ref=d).  Consequently, we do not believe
Sanchez=s testimony
implicates Texas Rule of Criminal Evidence 701, as appellant suggests, which
governs the admissibility of opinion testimony by a lay witness.[4] 
See Tex. R. Evid. 701.  

Even if Rule 701
were implicated, it is within the trial court=s discretion to
determine whether an opinion meets the fundamental requirements of the rule,
and that decision may be overturned only if the trial court abused its
discretion.  See Fairow v. State, 943 S.W.2d 895, 901 (Tex. Crim. App.
1997).  If the record contains any evidence supporting the trial court=s decision to
admit or exclude an opinion under Rule 701, there is no abuse of discretion,
and an appellate court must defer to that decision.  See id.  Sergeant
Gonzalez testified that he personally spoke with Maximillian Sanchez at the
scene and interviewed C.R. at the police station.  He then stated that C.R.=s statement was
consistent with that of Sanchez.  His testimony was based upon his personal
observation and reasonable inferences from that observation, and was helpful in
determining the events surrounding the complainant=s death. 
Consequently, we cannot say the trial court abused its discretion in admitting
Gonzalez=s testimony. 
Accordingly, we overrule appellant=s eighth issue.

We affirm the
trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  According to Hall=s
testimony, her mother and appellant=s
father dated.  She considered appellant her step-sister.  





[2]  The testimony differs as to whether Tomika Hall=s two children remained in the car
or also exited the vehicle.  





[3]  Actors are no longer required to retreat, if
reasonable, for conduct occurring on or after September 1, 2007.  Act of Mar.
20, 2007, 80th Leg., R.S., ch. 1, ''
2-3, 5, secs. 9.31, 9.32, 2007 Tex. Gen. Laws 1, 1-2.  However, appellant=s conduct occurred prior to September 1, 2007;
therefore this change in law is not applicable in this case.  





[4]  Texas Rule of Evidence 701 states: AIf the witness is not testifying as an expert, the
witness= testimony in the form of opinions or inferences is
limited to those opinions or inferences which are (a) rationally based on the
perception of the witness and (b) helpful to a clear understanding of the
witness= testimony or the determination of a fact in issue.@